Next case is Harold Shurtleff v. City of Boston Appeal No. 201158 Attorney Staver, you may proceed with the argument. Attorney Archangeli, you may mute your audio and video at this time. Good day, Your Honors. I'm Matt Staver on behalf of the appellants. I would like to reserve three minutes for rebuttal. Yes, certainly. May it please the court, on behalf of the appellants, I respectfully request this court reverse the lower court's order on summary judgment because the policies and practice violate the First Amendment. The city created a public forum. The city's denial was viewpointing content-based, and the decision maker has unbridled discretion. This case was here before on a preliminary injunction, but at that time there were only over a 12-year period 15 applications for private use of a person or group for the flagpole. Since the discovery, and this is before the lower court and this court, we have discovered 284 applications specifically for use of the flagpole by private individuals, including 39 the year before this particular denial. 285 was our application, and that was the only one that was denied. No flag was ever denied. Frankly, no flag was ever reviewed. And the only reason this one was reviewed is not because of how it looked, but because on the application it was turned a, quote, Christian flag, close quote. Excuse me, counsel. One thing that, as I understand those figures you gave us, Judge Casper says in her decision that that amounts to the fact that there was some private flag flying from this flagpole about 14 or 15% of the time. Is that a correct estimate? No, the judge doesn't say that. That's the argument. She does say it. I read her decision this morning. She says that that's the argument for the city. There is no record evidence of that amount of time. But there is a record of the number of permissions that have been granted and the days for which the permission is granted. And it's easy enough to extrapolate that out over the length of time that the applications have been collected. Yes, Your Honor, but in that public forum that is also a part of the application, there's a number of different locations, including the flagpoles that private individuals or groups can select. Those are also frequently empty. So just because a public forum... You lost me. I thought this case was dealing with the third of the three flagpoles over Boston City Hall. Now you're telling me there are other locations that are implicated? No, Your Honor. What I'm saying is that there's one application. You select any one of a number of public forums that they particularly designate, one of which is one of those flagpoles. But that's the only location. Whether or not it's a public forum is a different question. But that's the only location with which this case is concerned, that flagpole. That's correct. But putting a percentage on how much a public forum is used is not part of any constitutional history or precedent from the Supreme Court or any court. No, neither is adding up the number of times applications have been granted. I mean, the questions here are whether or not this is a public forum. And if it is not, whether or not the display of this flag is, as the district court held, government speech. Because if it is government speech, then a number of your other arguments fall by the wayside. Correct, Your Honor. It is a public forum by not only practice of 12 years, now nearly three more years added to that from 2017 television practice and an express policy. Counsel, excuse me, it would help me just focus a little more in this sense. I mean, there is a prior decision of this court, which carefully went through the three factors that control the government speech question. I understand that there has been additional discovery since that decision was issued. I'm trying to understand which factors of those three are open for reconsideration by this panel in light of the additional discovery that's been done. I get the sense from how you've begun that you're suggesting that perhaps only one of those factors is open for reconsideration. And that's the question of the state's control of the speech. Do I understand your position correctly? No, Your Honor. All three factors that this court listed, looking at the Pleasant Grove and the other... So the history of the speech at issue, how a reasonable observer might perceive it, all those are open for reconsideration in light of the discovery that was done? Yes, Your Honor. The use, those three, I would term them the use, the observer, what the observer will think, and control. On the use, I grant you, virtually other flagpoles are not places where the government opens up to individual use. But that's like any other designated or limited public forum. A government doesn't have to open up anything until it intentionally does so by policy or practice. But here, for 12 years prior to this event that happened in 2017, by policy and now also by practice, I should say by practice and now by policy in 2018, it especially says that the flagpole is a public forum for use by individuals and groups that they can ask for to be displayed during their event. And so that has 284 applications that have been approved. The use in this particular case is different than any other flagpole that we might encounter. If this was a flagpole that the city just normally doesn't open it up, we wouldn't be here. But the city intentionally opened it. And in the 2019 Shurtleff case, I presented before this court that the city could close that forum if they chose to, but they intentionally opened it. Where three years later, and the city still has not closed that forum. Five minutes remaining. Go ahead. But counsel, it seems to me, yes, the city has opened it up, as indeed it's been open all along. But they've opened it up subject to a certain criterion that the city has set. And that criterion, the one that's relevant here, is that the speech be secular in nature. And you've given us no example of the city in the 15-year period, or however long the period is, ever having contradicted or violated that qualification that it has set. Your Honor, I would respectfully disagree. There is another example of an openly religious flag being flown over the city hall plaza. There is the Portugal flag. Yes, but that was distinguished in our earlier opinion. That that was a national flag that happened incidentally to contain a religious symbol. It was not a flag that was primarily religious in purpose. But their discussion of it particularly focused on the religious or the Christian symbols. Whose discussion of it? The discussion of it on the website that they discussed that and described it. Who was they? The city and its other entity that it was using for the website. And it was speaking specifically, we cite all of the different things about how they go through different aspects of its Christian message. Moreover, the Bunker Hill flag, in fact, Mr. Rooney said that the only reason he denied this flag was not because of the face of the flag. He says he would have treated it just like the private organization, the Bunker Hill flag. It has a virtually identical cross, just a different color scheme, and it has a tree. That's the only difference. But it has a virtually identical cross. He says he would have treated it like the Bunker Hill flag, not because of what it looked like is why he denied it. Because the word Christian, that's the indisputable evidence, uncontradicted evidence, was listed in the application. And so there was no policy to exclude this flag. And, in fact, if our client had not referred to this as a… I don't understand when you say there was no policy. I thought the evidence was uncontradicted from Rooney, among others, that the policy, albeit it's not a written policy, was to distinguish between secular and non-secular flags. Is that testimony contradicted by any other testimony? He says that after the fact, but even having said that, that would still be impermissible when they've opened up the form. It would be like opening up any form and saying, we are allowing the viewpoint on history and our community to be expressed, but not from a religious viewpoint. I don't understand that argument. Your argument is that government, although government normally has wide control over government speech, government cannot, as part of government speech, endorse speech, non-religious speech, without at the same time endorsing religious speech? Well, that's assuming, Your Honor, that it's government speech. I know that, but that's what we found at the preliminary injunction stage, and I haven't seen any other or further evidence that would convince me that that likelihood of success finding is not… Your Honor, I think there's a lot of, excuse me, Your Honor, I think there's a lot of evidence, not only on the use, because we have 39 or three flags approved the year before this flag was, three flags a month approved on an average, 39. And that's more than double what we had over a 12-year period in the previous. It's 20 times more than what we had in the 12-year period of 284 versus 15. But on the observer, this court found that under those facts of 15 over 12 years, that the observer would conclude that it is an endorsement of religion. Yet Rooney said the opposite. That's the indisputable evidence before the court. That fact has changed. He said no one ever, in fact, considered any of the flags the city's speech. That's time. Finish your statement, please. On the matter with respect to the various flags of Cuba and Turkey and China, the undisputed evidence is we don't endorse those because that's not our speech. That's a private person or group asking for that flag. So the reasonable observer would not consider this as the government endorsement. While flagpoles are usually under the control, just like any other section of property in a public building or library, when the government intentionally by practice, as they've done here, and by express policy, that it's an all-comers policy for anyone seeking to have access to the flagpole within the subject matter that they've allowed history and the community. And that's what this was in that subject matter to do, to celebrate the Constitution Week and the history of the Commonwealth in Boston, particularly the religious leaders that were part of that historic past. So it fits all of those. And consequently, it's not public speech. It's private speech in a designated public forum. And I see that I'm running into my rebuttal. So I want to save the rest of my time for rebuttal. Yes, we'll hear you later. Thank you, Mr. Staver. Mr. Staver, if you could please mute your audio and video. And Mr. Archangelou, if you could unmute and proceed. Good afternoon. This honorable court. The first issue that I want to address, really, because it is really the biggest change or the event that came out of discovery since we were last here for the preliminary injunction, is the argument of the appellant that the raising of 284 flags without a denial in some way means that the city has designated its flagpole as a public forum. Just to play some context in terms of those 284 flag raisings, those 284 flags were raised over a 12-year period. It also doesn't represent 284 unique flags that were raised by the city. In the joint statement of undisputed facts that is submitted in the record of this case, there is no more than 17 flags that were raised by the city over this period of time. I also did the math on this. I think the 15% number is off 284 times per day over a period of 12 years. I think it computes close to a period of 6% of the time when the city would have had a flag other than the city flag raised in place of the raised in as a substitute flag. And just looking at it, the Turkish flag has been raised over 10 times. The Bunker Hill Association flag has been raised over 10 times. Mr. Arcangeli, how many of those 17 flags were foreign country flags? I believe we have 13 foreign country flags and 4 specific cultural organizations that were identified within the joint statement of facts. The key point, though, is there were no flags identified whose primary purpose would have been to advocate for any sort of religious organization or religious movement. I feel like that sort of limited access supported by the discretion allowed by the city in and of itself does not create a public forum. Under the case law in Cornelius that I cited in the brief, such limited access does not in and of itself create a designated public forum. And where the city has not designated a public forum in what is absolutely a non-traditional forum, which is the city's own flagpole that flies in front of the city, I do believe that that analysis of the three factors of whether or not the city was engaging in government speech is the proper analysis in this case. And given the fact that the city has taken the position that it has not designated this as a public forum, also I will address the fact that city applications, when speaking of the City Hall flagpoles, speak of the location at the flagpoles. They do not speak of the flagpoles in a flag-raising ceremony as an event that is a public forum. The public forum is the location at the flagpoles, which is a part of City Hall Plaza. City Hall Plaza is a large area that covers multiple acres, which can accommodate many free speech activities at the same time. They have a permitting and… Councilman, may I just ask you please, accepting the proposition that we're dealing here with government speech, it's not a public forum, we're dealing with government speech, you acknowledge that the Establishment Clause does apply to the way in which the government exercises that speech, is that correct?  Okay, so is it your position that the Establishment Clause requires the city to… Is that your position, that it would be violative of the Establishment Clause for the city to accede to the request here, and in its way, similar requests? Is that your position? Yes, Your Honor, and Your Honor, the position of the city really is that the record fails to show that the city has shown a preference for one religion or religious denomination over another. That was, I think, the District Court… Yes. Yes, I think the way the District Court referred to it was a preference not for one religion over another, but a more general proposition, a preference for non-religious flags over religious flags. That, I think, is the way in which the preference was stated. Is it your position that the Establishment Clause requires the city to apply that preference? I don't know that the Establishment Clause requires the city to establish the preference, but I do believe that the city engaging in government speech does have discretion over the messages that it sends up. And that looking at the second factor of government speech, and, you know, whether or not or who the speech may be practically imputed to, that the city is well within reason to determine that it does not want to resist, it doesn't want to risk raising a Christian flag and providing the appearance to the public at large that it is endorsing a specific religion. Along the lines of Judge Lopez's question, certainly the policy that the city advocates and applies certainly has the effect of avoiding excessive entanglement with the Establishment Clause. That is correct, Your Honor. And what I would also say is that the city's practice in the public forums that it has designated in its application has been to allow religious events to occur and to allow religious installations to be installed on the public forums that have been identified on the city's applications. That's undisputed in the record in this case. So that the city isn't showing a preference for non-religion over religion, it does allow religious displays and religious speech to occur in the public forums which it has identified. It just disagrees with the argument that it has designated its flagpole as a public forum for which any member of the public can string up any flag with any message that it can broadcast to the entire city from 83 feet above the ground in front of City Hall. Counsel, your opponent has made an argument that if one of the tests for government speech is how a reasonable observer would, looking at that A flag on the flagpole, would view it. He then says, with reference to the Rooney Affidavit, you know the city never actually looked at any flag. And so here they didn't really look at the flag. The flag is really very similar to the Bunker Hill Association flag. And Mr. Rooney said, well, gosh, I think the two of them are really close. It's only the fact that we labeled it a Christian flag. Okay, so let's go back to the reasonable observer taking a look at a flag flying 83 feet above the ground. And I'll assume it's somebody with better eyesight than I have who can actually see what is on the flag. But the argument being made is kind of ironic. It isn't that different from non-religious flags that somebody looking at it would clearly identify it as a religious flag, regardless of the fact that we think it is the Christian flag. So what's the response? Your Honor, that is the application that the city received. And really what's important here is the message that is sent out by the flag, more so maybe than the actual image of the flag or what is projected on the flag. And what is put on the application, what is reviewed by the commissioner before he approves or disapproves of a flag raising, is the message that is sent out. Okay, so does the city, suppose they hadn't put it's a Christian flag. Suppose there's somebody in, well, let's pick the Southern Baptists just out of the air. They make an application to fly a flag. They don't say it's the Southern Baptist flag. Under your policy, you don't look at the flag. You just look at what the application says. Is that correct? Under current policy, Judge, I would say no, that's not correct. Within the record, there is a current flag raising policy that the city has adopted subsequent to even the preliminary injunction earlier in this case where there are certain size requirements for the flag and the actual image of the flag would be reviewed under the new policy. We're going back to Mr. Rooney. It is in his testimony that he did not necessarily review the images of the flags that went up. So in that case, your honor, it is certainly possible that a group or organization could label their flag as something non-religious and potentially slip it by the city. That's really what would happen is it would be more of an administrative failure by the city to enforce its policy in that case. It certainly doesn't establish it's not government speech and certainly doesn't establish it's a public forum. Correct, your honor. And your honor, I'll also point out that in the 12 years that we've looked back on that, there have been no instances of somebody sort of slipping a flag in that would have been primarily religious or similar to the flag that was asked to be raised by the appellants in this case, suggesting that that review procedure has at least been successful to this point in preserving the city's policy. Counsel, just to, I guess, in part to follow up on Judge Celia's question, I guess you would agree that if the city decided to display this flag in the wake of that decision, any other religious organization that sought to apply a flag, that the city would have to accede to that request, would it not? You would not want to be in the business of saying we'll fly one religious flag but not another, correct? I do agree, your honor. And I do agree that that is mandated by the government speech case law that we've seen that says the city may not violate the establishment clause when engaging in government speech. So really for the city, it's an all or nothing decision as to what it does with these primarily religious flags. And where one of the factors in government speech is the city's discretion over the flags that fly, when we start getting into religious flags, we start chipping away at the discretion that the city may have over the flags that it raises over its flagpoles because of that establishment clause mandate in the government speech law. On the issue of discretion, your opponent makes something out of the fact that your brief doesn't reply to his argument that the mere fact that this is discretionary, given it's, in their view, a constraint on speech, makes it invalid. And it's true, your brief didn't expressly address that argument. Is it your position you implicitly addressed it in the rest of your brief? I do believe so, your honor. Is this the prior restraint argument that they had made in their brief? It's part of it. Yes, and I think that where we addressed that was a prior restraint argument is an argument underneath the First Amendment of the Constitution. Where a government engages in government speech, it does not implicate the First Amendment rights of others. So it would not implicate that prior restraint argument, your honor. Okay. I think I may have interrupted Judge Lippez. No, no, that's fine. That's fine, Judge Lippez. Thanks. No, I'm all set. Okay. Any further argument? No, your honor. Unless there are further questions, I'll wrap. Judge Salyer, do you have any further questions? No, not for counsel for the city.  Attorney Arcangeli, if you could mute your audio and video and we'll have a three minutes of rebuttal from Attorney Staver. May it please the court. Counsel, can I just ask you a question, please? Again, on the premise that the establishment clause, they were dealing here with government speech, the establishment clause applies, and then the Lemon Test would apply. And the Lemon Test has as one of its prongs the successive entanglement issue that again Judge Salyer referred to. Would you agree that if the city were to permit this flag to fly, it could not then, in the wake of that, deny any requests from other religious entities to fly their flags? Otherwise, it would be making very problematic judgments about which religious flag should apply. Would you agree that that would be the necessary outcome of the decision to fly this flag? No, I wouldn't, your honor, because the subject matter that the city has intentionally opened up in a number of places of its written policy and its practice are the subjects of history and the community. And if a flag doesn't meet with that, or the other criteria that are listed for approval, then a flag would not be flown religious or otherwise. So under your view of the policy, the city should fly the Christian flag, but would have complete discretion to deny, say, a Muslim flag, because Muslims were not part of the history and evolution of the city of Boston. No, your honor, because the policy is to also recognize the diverse communities, not just history. Let's go back to Judge Lopez's question. If the policy is to recognize diversity, then how could any religious flag be denied? You would think that all religions are represented in the greater Boston community. Well, and I think that that would be accurate in general as long as it was actually being done to recognize the community and or the history as it was in this particular case. This was not a Christian event. This was a Constitution celebration talking about the rule of law and some of the founders like John Adams and so forth that are from the Commonwealth of Massachusetts to recognize that Christian heritage. Therefore, it was consistent with the policy. With regards to the foreign countries flag, no foreign country or country has requested. These have been private individuals. And in fact, if this was government speech, then the city would be violating state law, which prohibits the flying of a foreign flag on city or government property. That's why they have distanced themselves in the brief and in the testimony that's undisputed that these flags do not represent the speech of the government. That's why they didn't review any of the 284 flags. And the only reason they reviewed this is not because of the flag, because a picture of the flag was given, but because of the word Christian. Therefore, if the only way you would know that this was and only Rooney would know that it's a Christian flag is because of the application, nobody would know that or to the speech of the city. I see that I'm out of time unless the court has any other questions. I asked my colleagues. Do you have any other questions? No. Thank you. Thank you, counsel. Thank you. You may sign off. Yes, thank you. That concludes our argument in this case. Attorney Staver and Attorney Archangel, you should disconnect from the meeting.